### CHAMBERLAIN *v.* TOWN OF WHEATLAND.

*(Supreme Court, General Term, Fifth Department.* October 19, 1889.)

1. HIGHWAYS—OBSTRUCTIONS—PROVINCE OF JURY.

In an action for injuries caused by obstructions in a highway, it appeared that, when the vehicle in which plaintiff was traveling started from the hotel, one of the horses balked, and, when finally urged to move by the driver, the whole team went at a brisk gait. About 30 feet from the hotel, in the highway, was a well, on one side of which the traveled track was 15 feet wide, and on the other 57 feet. The driver went through the narrow passage, and struck a heap of frozen snow and ashes near the well, which capsized the vehicle. The obstruction was large enough to upset any vehicle which struck it in rapid motion. *Held,* that the question of negligence was properly submitted to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Before the vehicle reached the hotel the same horse balked, and, when induced to go by the driver, the team moved forward at a run, whereupon plaintiff's wife became alarmed, and wished to get out of the vehicle, to which plaintiff replied that the driver could manage his team. There was evidence that the balking horse was not commonly used for carrying passengers. *Held,* that the question of contributory negligence was properly submitted to the jury.

3. SAME—INSTRUCTIONS.

It was not error to refuse a charge that "if the horses were either of them balky or otherwise unmanageable it was negligence to drive them in a public vehicle."

Appeal from circuit court, Monroe county.

Action by Jonathan Chamberlain against the town of Wheatland, for injuries caused by the obstruction of a highway. Defendant appeals from a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*Joseph W. Taylor,* for appellant. *George W. Forsyth,* for respondent.

MACOMBER, J. This action is brought in pursuance of chapter 700 of the Laws of 1881, by which a party is permitted to recover for personal injuries and for loss of property by reason of defective highways or bridges, in the same manner as such actions theretofore could be maintained against highway commissioners. The plaintiff, with his wife and another person, were passengers in a stage, or public vehicle, running from the Rochester & Pittsburg Railroad station, at Mumford, N. Y., for the accommodation of residents of that village, and of those of the village of Caledonia, one mile south therefrom. At about the time of leaving the station the off horse, which is sometimes spoken of in the evidence as a mustang, balked, and was whipped by

the driver, and at last, with a plunge, the team went forward towards the hotel in the village of Mumford, where one of the passengers, one Mr. Tilley, was to alight.   The driver pulled up to the platform of the hotel, and, after discharging Mr. Tilley, started on towards Caledonia.   The same horse was again disobedient, and refused to go, but shortly moved on at a rate of speed variously estimated by the several witnesses; and, after going a distance of about 60 or 70 feet, the stage was run upon a hummock in the highway, composed of frozen snow and ashes, where it was overturned, and the plaintiff injured.

One of the grounds of the motion for a new trial, which is repeated on the argument upon this appeal, is that the verdict is against the weight of the evidence.   From an examination of the testimony the fact is disclosed, as shown by several apparently credible witnesses, that this spot where the stage or wagon was overturned had been suffered to remain in a dangerous condition for a period of about 10 weeks or 3 months.   It is further shown that the hummock of ashes and frozen snow was from a foot to 22 inches in height, and was sufficient to overturn any vehicle rapidly going upon it. It was located within a distance of 2 to 4 feet from the rail surrounding a pump and well located within the highway, and near to the west side of Main street, about 20 or 30 feet from the hotel in question.   As the driver stood at the platform of the hotel where Mr. Tilley alighted, his horses were faced substantially to the south, in the direction of Caledonia.   The traveled space between the inclosure of the well and the hotel was about 15 feet, through which vehicles of this kind could readily pass.   The course, also, to the left of the hotel, and to the east thereof, was equally open and available for the passage of vehicles for a distance, between the well and east curb, of 57 feet.   There was no imprudence on the part of the driver in passing to the left of the well rather than to the right.   The speed at which the team was at last started from the hotel southward was not by any means excessive. It was no faster than the gait which would naturally be taken by a team where one of the horses had balked, and at last had started forward somewhat impetuously.   In any event, all of these matters were proper subjects for the consideration of the jury, and were submitted to them under an impartial charge, leaving the whole case to their judgment.

It is also claimed on the part of the appellant's counsel that the plaintiff himself was guilty of negligence which contributed to the commission of the injury.   It is shown, as above mentioned, that while at the railway station the off horse had balked, and had received a severe whipping, and when the team went forward towards the hotel at Mumford it went on a run for some portion of the distance.   Evidence was given that the wife of the plaintiff became a little nervous, and wished to get out of the wagon, but that the plaintiff himself reassured her, saying, in substance, that the driver was capable of managing, or was competent to manage, the team.   Whatever the appearances were in the ride from the railway station to the hotel, the same must be considered in the light of the fact that this was a public conveyance running for the accommodation of citizens regularly between these two villages, over which the plaintiff had no control.   There is no sufficient evidence that would have warranted the jury in finding that the plaintiff himself had reason to believe either that this horse was vicious, unruly, and unmanageable, or that the driver was incompetent.   Testimony was given by some witnesses to the effect that the animal which balked was not the regular stage horse, and was not commonly used for the conveyance of passengers.   Under all of these circumstances it was a fair question for the jury to say whether the plaintiff riding in a public conveyance without previous knowledge of the vicious character of the horse, and without notice of any incompetency on the part of the driver, should be chargeable with any misconduct or want of care for his own safety which contributed to the injury, and their determination of that ques-

tion, which was submitted to them as fairly as the defendant could properly ask the same to be, should be deemed to be conclusive. Upon the principal questions, therefore, involved in this appeal, there seems to be no legal error committed at the trial.

Much stress, however, is placed by the counsel for the appellant upon the exceptions taken to the rulings of the learned judge at the circuit in receiving and rejecting evidence, and in refusing to charge certain requests made by him. The learned counsel for the appellant says, in his brief, that the court "was asked to charge that if the driver was unskillful or incompetent, and his manner of driving contributed to the injury, then the plaintiff cannot recover, provided he either knew, or the circumstances were such that he ought to have known, of the driver's incompetency." An answer to this proposition is that no such request was made by the counsel to the court. What the counsel actually requested the court to charge was as follows: "Also, if the driver was unskillful or incompetent, and his manner of driving contributed to the injury, the plaintiff cannot recover, provided he either knew or ought to have known that the driver was incompetent." This is a materially different proposition from the one discussed in the brief, and the court was wholly justified in refusing to charge it.

The counsel also asked the court to charge "that if the horses were either of them balky, or otherwise unmanageable, it was negligence to drive them in a public vehicle." This was declined and an exception taken. There was no error in this refusal. There is no principle that would justify a trial court in instructing a jury that it was negligence to undertake to drive a balky horse in the public streets. It is also argued that it was error for the court to permit the witness William H. Adams, the driver of the stage, to say what it was that tipped the vehicle over. It is true that it was the province of the jury to determine what tipped the wagon over; but, after giving the facts, it was not error for the witness to be permitted to say that it was the pile of ashes that worked the mischief. It would not have been legal error to have sustained the objection to the question put to this witness; but, on the whole, we do not think that the question and answer were ground of error, inasmuch as the facts were stated by the witness from which the jury could draw the proper inference. We have examined the other exceptions in the case, and do not find in them any matter which would lead to a reversal of the judgment. By the answer interposed by the defendant, the fact that the plaintiff was a passenger in a public stage-coach, and was being conveyed as a passenger for hire, is not only conceded, but affirmatively alleged. This averment renders quite unnecessary any extended discussion of the question whether any supposed negligence of the driver of the stage could be imputed to the plaintiff. *Dyer* v. *Railway Co.*, 71 N. Y. 228; *Masterson* v. *Railroad Co.*, 84 N. Y. 247, and the cases there cited. The judgment and order should be affirmed. All concur.